United States District Court
Southern District of Texas
**ENTERED**
April 30, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CARL HESTER, individually and on behalf of all others similarly situated, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-18-1078 |
| PHILLIPS 66 COMPANY and HAYES FIELD SERVICES COMPANY, LLC, | § § § § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

Carl Hester sued Phillips 66 Company and Hayes Field Services Company, LLC, alleging that they did not pay him the overtime wages required under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et. seq.*, and the New Jersey State Wage and Hour Law, N.J.S.A. § 34:11–56a *et seq.* (Docket Entry No. 17 at ¶¶ 1–5). Hayes moved to dismiss the claims against it based on improper venue under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a), or to transfer the case to the Northern District of Oklahoma under 28 U.S.C. § 1404(a). (Docket Entry Nos. 23, 24). Hester responded. (Docket Entry No. 45). After the court denied the motion to dismiss, finding venue proper in the Southern District of Texas, Phillips 66 responded to the motion to transfer, and Hayes replied. (Docket Entry Nos. 51, 53). Hester has also moved for conditional certification and issuance of notice. (Docket Entry No. 33). Phillips 6 and Hayes responded to the certification motion, and Hester replied and surreplied. (Docket Entry Nos. 38, 42, 50).

Based on the pleadings; the motions, responses, and replies; and the applicable law, the court denies the motion to transfer and denies, on this record, the motion for conditional certification and notice. The reasons for these rulings are explained below.

I. **Background**

In 2017, Hayes, an Oklahoma-based company that provides "contract inspectors, construction managers, and support personnel to projects across the United States," assigned Hester to work for Phillips 66, an energy company, as a construction-field representative. (Docket Entry No. 17 at ¶¶ 1, 16, 20, 22). Hester alleges that while he worked for Hayes and Phillips 66 from September 2017 to March 2018, he was often scheduled to work 10 to 12 hours a day, 7 days a week. (Docket Entry No. 17 at ¶¶ 28–30). He alleges that Hayes and Phillips did not pay him overtime wages for hours exceeding 40 in a work week. (*Id.* at ¶¶ 37–38).

Hayes has its principal place of business in Edmond, Oklahoma, and another office in Barnsdall, Oklahoma. (Docket Entry No. 24 at 3). It "is not incorporated in Texas, does not have its principal place of business in Texas, and does not have a registered agent in Texas." (*Id.*). Since July 2015, Hayes has had a contracting relationship with Phillips 66 to supply labor and equipment for specific projects. (Docket Entry No. 23-1 at ¶ 3). According to Hayes, it received Phillips 66's requests for workers for the field assignments that Hester and the putative class members were staffed to from Phillips 66's Bartlesville, Oklahoma office and the two companies communicated to each other from their respective offices in that city. (*Id.*). Hayes commissioned a separate payroll-processing company in Tulsa, Oklahoma "to process, prepare, and deliver payroll checks for all of its employees, including Plaintiff Carl Hester and the 'putative class members'" from the Tulsa office. (*Id.* at ¶ 6).

2

In April 2018, Hester filed this suit against Phillips 66, alleging violations of the FLSA and the New Jersey State Wage and Hour Law. (Docket Entry No. 1). In August 2018, Hester sought leave to file an amended complaint because his counsel "learned that Hester was a W-2 employee of Hayes Field Services Company, and was staffed to Phillips 66." (Docket Entry No. 15 at 1). The amended complaint added Hayes as a defendant to "reflect the proper relationship between the parties." (*Id.*). The court granted leave, and Hayes was added as a defendant. (Docket Entry Nos. 16, 17).

Hayes answered the amended complaint in September 2018. (Docket Entry No. 21). The next month, Hayes timely filed an amended answer. (Docket Entry No. 22). Hayes also moved to dismiss for improper venue or, in the alternative, to transfer the case to the Northern District of Oklahoma. (Docket Entry Nos. 23, 24). The amended answer raised the affirmative defense of improper venue under Rule 12(b)(3). (Docket Entry No. 22 at 9). The court denied Hayes's motion to dismiss for improper venue, concluding that venue is proper in the Southern District of Texas. (Docket Entry No. 49).

In February 2019, Hester moved for conditional certification of a class defined as:

All persons who worked for or on behalf of Hayes, who were paid on a day rate basis, classified as an independent contractor, and staffed to Phillips 66 as a Construction Field Representative at any time in the last three (3) years in addition to any tolling period the Court finds appropriate.

(Docket Entry No. 33 at 8).[1] Hester included a proposed notice and proposed deadlines for the defendants to disclose information about the putative class members; Hester's counsel to send

---

[1] An alternative definition of the proposed class appears later in Hester's motion and does not specify that the employees were staffed as construction-field representatives. (Docket Entry No. 33 at 13). Because the earlier definition is more specific, the court analyzes that definition in this memorandum and opinion.

Notice and Consent Forms by mail, email, and text message; the members to return signed consent forms; and Hester's counsel to follow up with the members about consenting to join. (Docket Entry No. 33-6; Docket Entry No. 33-5). Phillips 66 responded in opposition, and Hayes joined the response. (Docket Entry Nos. 38, 39). After Hester replied, the court ordered Hester to file more information about the putative class members. (Docket Entry Nos. 42, 49). Hester then surreplied, addressing where putative class members worked, why they are similarly situated, and why these and other points support venue in the Southern District of Texas. (Docket Entry No. 50).

## II. The Legal Standards

### A. The Motion to Transfer Venue

Section 1404(a) allows a district court to transfer a civil action to a district court where it might have been brought if the transfer serves "the convenience of parties and witnesses . . . [and is] in the interest of justice." 28 U.S.C. § 1404. "The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008). To prevail, the moving party must demonstrate that its preferred venue is "clearly more convenient than the venue chosen by the plaintiff" to prevail on a motion to transfer. *Id.* at 315.

The Fifth Circuit has adopted the private- and public-interest factors described in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), to determine whether transfer is proper. *See Volkswagen*, 545 F.3d at 315. The private concerns are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious

4

and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public concerns are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict or laws of the application of foreign law." *Action Indus., Inc. v. U.S. Fidelity & Guar. Co.*, 358 F.3d 337, 340 n.8 (5th Cir. 2004) (citing *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 827 (5th Cir. 1986)).

### B. Conditional Certification

Under FLSA § 207, covered employers are required to compensate nonexempt employees at overtime rates for time worked in excess of statutorily defined maximum hours. 29 U.S.C. § 207(a). Section 216(b) provides a right of action for employees against employers who violate § 207. Similarly situated employees may "opt-in" to a lawsuit under § 207(a). Courts recognize two methods for determining whether to certify a collective action on a conditional basis or authorize notice to similarly situated employees: the spurious class action *Shushan* approach, or the two-step *Lusardi* approach. *Aguirre v. SBC Commc'ns, Inc.,* No. H-05-3198, 2006 WL 964554, at *4 (S.D. Tex. Apr. 11, 2006) (citing *Shushan v. Univ. of Colo. at Boulder*, 132 F.R.D. 263 (D. Colo. 1990); *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987)). The Fifth Circuit has not required a specific method. *Mooney v. Armaco Servs. Co.*, 54 F.3d 1207, 1216 (5th Cir. 1995). Most courts use the *Lusardi* approach. *Aguirre*, 2006 WL 964554, at *4; *see also Johnson v. Big Lots Stores, Inc.*, No. 04-3201, 2007 WL 5200224, at *3 (E.D. La. Aug. 21, 2007) ("Since *Mooney* district courts in the Fifth Circuit have uniformly used [the *Lusardi* approach] to determine whether a collective [action] should be certified under the FLSA.").

5

The first step of the *Lusardi* analysis, the notice stage, requires a minimal showing by the plaintiff that (1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist, (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted, and (3) those individuals want to opt in to the lawsuit. *Maynor v. Dow Chem. Co.*, No. G-07-0504, 2008 WL 2220394, at *6 (S.D. Tex. May 28, 2008). "A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *Aguierre*, 2006 WL 964554, at *5 (quoting *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005)). A court also "has the power to modify an FLSA collective action definition on its own" if the "proposed class action definition does not encompass only 'similarly situated' employees." *Dreyer v. Baker Hughes Oilfield Operations, Inc.*, No. H-08-1212, 2008 WL 5204149, at *3 (S.D. Tex. Dec. 11, 2008) (citing *Baldridge v. SBC Commc'ns, Inc.*, 404 F.3d 930, 931–32 (5th Cir. 2005)). Because the court's decision at this first step is usually based only on the pleadings and affidavits, the standard is lenient and typically results in conditional certification. *Id.* Discovery is usually not conducted at this stage, and courts do not review the underlying merits of the action in determining whether to grant conditional certification. *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 926 (D. Ariz. 2010). Some factual support for the complaint allegations of class-wide policy or practice must be shown to authorize notice. *Maynor*, 2008 WL 2220394, at *6; *see also Barron v. Henry Cty. Sch. Sys.*, 242 F. Supp. 2d 1096, 1103 (M.D. Ala. 2003) ("[S]ome identifiable facts or legal nexus must bind the claims so that hearing the cases together promotes judicial efficiency."). Courts have favored collective actions when a plaintiff can establish that common issues of law and fact exist and arise from the same alleged activity, because a collective action proceeding may

6

"reduce litigation costs for the individual plaintiffs and create judicial efficiency." *Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 823 (N.D. Tex. 2007) (quoting *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).

Once a court conditionally certifies a class, the case proceeds as a collective action during discovery. *Aguirre*, 2006 WL 964554, at *5 (citing *Mooney*, 54 F.3d at 1214). At the second stage of the analysis, the defendant may move to "decertify" the conditionally certified class. *Id.* (citing *Mooney*, 54 F.3d at 1214). The court then must make a factual determination as to whether the employees are similarly situated; if it so finds, the collective action may proceed. *Id.* Alternatively, if the court finds that the employees are not similarly situated, the opt-in plaintiffs are dismissed without prejudice, and the original plaintiffs proceed with their individual claims. *Id.* (citing *Mooney*, 54 F.3d at 1214).

## III. Analysis

### A. The Motion to Transfer

#### 1. The Private-Interest Factors

The location of documents does not weigh in favor of transfer. Hayes argues that the relevant employee and payroll records are in the Northern District of Oklahoma because its payroll company is located in that district, "[a]ll of the payroll records and pay data" are there, and "all of [its] employee records, including the time sheets, personnel files, job descriptions and pay policies" are in or near the Northern District of Oklahoma. (Docket Entry No. 23 at 4). Phillips 66 responds that, because it is headquartered in Houston, "[d]ocuments relating to Phillips 66's Master Services Agreement with Hayes and the services Phillips 66 contracted for with Hayes, including the services provided by Hester and any potential opt-ins, are located in Houston, Texas." (Docket Entry No.

51 at 5; *see* Docket Entry No. 45 at 7–8). Phillips 66 argues that because Hayes agreed to make its records available for inspection and copying by a certain date, there is no issue created by documents located only in Oklahoma. (Docket Entry No. 51 at 5).

Because each party argues that helpful physical evidence is in their preferred venue, and no party argues that it cannot make the documents available in their nonpreferred venue, this factor does not weigh in favor of, or against, transfer.

The ability to secure the attendance of witnesses "is arguably the most important of the factors listed." *LeBouef v. Gulf Operators, Inc.*, 20 F. Supp. 2d 1057, 1060 (S.D. Tex. 1998). "The convenience of one key witness may outweigh the convenience of numerous less important witnesses." *Id.* at 1060. "[T]he moving party must offer more than mere allegations that certain key witnesses are not available or are inconveniently located," and "must specifically identify the key witnesses and outline their testimony." *Id.* (citation omitted).

The location of key nonparty fact witnesses is the primary consideration in assessing this factor. Each party has identified witnesses needed to testify in this case. Hayes argues that all of its "owners, operators and key employees witnesses work or reside within or near the Northern District of Oklahoma." (Docket Entry No. 23 at 3). Hayes identifies four individuals—Chance Alexander and Marcus Alexander, two former Hayes operators; Sandra Hayes, Hayes's majority owner; and Christopher Alexander, the former technical director—as key because they "were responsible for the decision-making with respect wages and compensation." (*Id.*; *see* Docket Entry No. 53 at 1). Hayes argues that Phillips 66 also has key witnesses in or near the Northern District of Oklahoma because "Hayes dealt with Phillips 66's representatives" in that State. (Docket Entry No. 23 at 3).

8

Phillips 66 responds that three of Hayes's "identified witnesses are owners or operators of Hayes, and thus, their convenience is entitled to less weight because Hayes can compel their testimony at trial." (Docket Entry No. 51 at 6 (citing *S & J Diving v. Doo–Pie, Inc.*, No. H-02-0293, 2002 WL 1163627, at *6 (S.D. Tex. May 30, 2002); *Stuart v. Fire-Dex, LLC*, No. 13-cv-675, 2013 WL 5852234, at *5 (S.D. Tex. Oct. 30, 2013))). Phillips 66 contends that most of its key decisionmakers and potential witnesses are in Texas, not Oklahoma, making the Southern District of Texas a better venue. (*Id.*). Hester has already taken the deposition of Hayes's receiver, David Rhodes, in Houston. (Docket Entry No. 45 at 7).

Hayes responds that it would be costly to make its witnesses available to testify in Houston. Phillips 66 and Hester argue that it would be costly to make its witnesses testify in Oklahoma. Because transfer would only shift the burden, this factor weighs against transfer.

The final private-interest factor—other practical problems that affect whether trial is expeditious and inexpensive—weighs slightly against transfer. Phillips 66 argues that "any alleged wrong is centered in Texas where Hester actually provided services to Phillips 66," and that its Master Services Agreement with Hayes "contains a choice of law provision selecting Texas," which Phillips argues signals that "Hayes agreed that Houston, Texas would be a proper venue." (Docket Entry No. 51 at 7). Hayes attended a pretrial conference before it was added as a party, which Hester argues suggests that Hayes does not face a significant burden if the case proceeds in this district. (Docket Entry No. 45 at 4).

Taken together, the private-interest factors weigh slightly against transfer to the Northern District of Oklahoma.

### 2. The Public-Interest Factors

9

The public-interest factors relevant to the § 1404(a) analysis concern the fair and efficient administration of justice. Conservation of judicial resources is a primary consideration. This factor favors transfer when transfer allows different cases involving the same parties or issues to be heard in a single forum. *See Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that [section] 1404(a) was designed to prevent."); *Andrade v. Chojnacki*, 934 F. Supp. 817, 834 (S.D. Tex. 1996) (transfer is favored when it avoids duplicative litigation); *Brock v. Entre Comput. Ctrs., Inc.*, 740 F. Supp. 428, 432 (E.D. Tex. 1990) (the interests of justice favor transfer when the prospective transferee court has previously adjudicated cases involving the same defendant and similar issues).

Phillips 66 argues that the 9.4 months median time from filing to deposition in the Northern District of Oklahoma compared to 7.6 months in the Southern District of Texas's 7.6 weighs against transfer. (Docket Entry No. 51 at 8). Neither Hester nor Hayes has responded to this argument. But the less-than-two-months difference in time from filing to disposition between the districts does not weigh for or against transfer to the Northern District of Oklahoma.

Neither district is favored under the second factor, the local interest in having localized interests decided at home. Phillips 66 and Hester argue that the Southern District of Texas has a greater interest because even though Hester did not work in this district, he did work in Texas. Phillips 66 argues that because Hester did not work in Oklahoma, this Texas district has the greater interest in adjudicating this case. (Docket Entry No. 51 at 8; Docket Entry No. 45 at 8). But the Northern District of Oklahoma may have an interest in adjudicating a case against Hayes, an Oklahoma company.

10

The third and fourth factors, the forum's familiarity with the law that will govern and the avoidance of conflicts-of-law problems, do not favor transfer. Both districts are familiar with the FLSA, and the case does not implicate foreign law.

Taken together, the public-interest factors weigh slightly against transfer to the Northern District of Oklahoma. Because the private-interest factors weigh against transfer and the and public-interest factors are neutral, the motion to transfer venue is denied.

### B. Conditional Class Certification

At the notice stage, the question is whether Hester has made substantial allegations of a common compensation plan or policy that violated the FLSA. Hester contends that he has alleged Hayes and Phillips 66 policies and practices that denied the proposed class members the overtime compensation they were entitled to receive under the FLSA. These policies and practices included refusing to pay overtime for hours worked in excess of 40 in a work week.

#### 1. Hester Has Not Shown that Other Aggrieved Individuals Exist

Hester must show that it is reasonable to believe that there are other aggrieved employees who were subject to the allegedly unlawful policy or plan. *See Morales v. Thang Hung Corp.*, No. 4:08-2795, 2009 WL 2524601, at *3 (S.D. Tex. Aug. 14, 2009); *Prater v. Commerce Equities Mgmt. Co., Inc.*, No. H-07-2349, 2007 WL 4146714, at *5 (S.D. Tex. Nov. 19, 2007). The burden at the conditional-certification stage is low. *Barajas v. Acosta*, No. H-11-3862, 2012 WL 1952261, at *3 (S.D. Tex. May 30, 2012).

Hester argues that he has identified as aggrieved individuals "other day rate workers classified as independent contractors" staffed to Phillips 66 by Hayes. (Docket Entry No. 33 at 9). Hester states in an affidavit that "[b]ased on [his] experience" working for Phillips 66, his

11

"observations on location, and [his] conversations with co-workers, all of the day rate workers classified as independent contractors that Hayes staffed to Phillips 66" worked similar hours and did not receive different overtime compensation regardless of their location or expertise. (Docket Entry No. 33-1 at ¶¶ 9, 13, 14). Hester argues "that there are approximately fifty Putative Class Members that [the] Defendants uniformly deprived overtime compensation," based on a sampling of the paystubs from Hayes for construction-field representatives staffed to Phillips 66. (Docket Entry No. 42 at 2; *see* Docket Entry No. 42-1).

The defendants assert that Hester has failed to show that other aggrieved individuals exist, pointing out that there are neither opt-in plaintiffs nor declarations from other members of the proposed class. (Docket Entry No. 38 at 17). The defendants argue that "Hester does not state the names of his former co-workers to whom he allegedly spoke, what [construction-field representative] disciplines those co-workers held, or any meaningful details." (*Id.*).

Courts consistently rely on declarations from other employees or the presence of opt-in plaintiffs to find there are other aggrieved individuals. *See, e.g.*, *Pierce v. Apache Corp.*, No. H-18-1803, 2019 WL 338129, at *2–3 (S.D. Tex. Jan. 28, 2019).[2] Few, if any, cases have found that aggrieved individuals exist without this evidence. *See Austin v. Onward, LLC*, 161 F. Supp. 3d 457, 464 (S.D. Tex. 2015) (plaintiff had not shown other aggrieved individuals exist when certification motion was

---

[2] *See also Song v. JFE Franchising Inc.*, No. 4:17-cv-1775, 2018 WL 3993548, at *3 (S.D. Tex. Aug. 20, 2018); *Freeman v. Progress Residential Prop. Manager, LLC*, No. 3:16-cv-00356, 2018 WL 1609577, at *4 (S.D. Tex. Aug. 3, 2018); *Wade v. Furmanite Am., Inc.*, No. 3:17-cv-00169, 2018 WL 2088011, at *3 (S.D. Tex. May 4, 2018); *Moreno v. Nat'l Oilwell Varco, L.P.*, No. H-17-cv-782, 2018 WL 1932550, at *3 (S.D. Tex. Apr. 23, 2018); *Sanchez v. Schlumberger Tech. Corp.*, No. 2:17-cv-102, 2018 WL 2335333, at *6 (S.D. Tex. Jan. 24, 2018); *Shaw v. Jaguar Hydrostatic Testing, LLC*, No. 2:15-cv-363, 2017 WL 3866424, at *2 (S.D. Tex. Sept. 5, 2017); *Rosas v. Dark Star Prod. Testing, Inc.*, No. 2:16-cv-12017 WL 8682221, at *4 (S.D. Tex. July 31, 2017); *Baucum v. Marathon Oil Corp.*, No. H-16-3278, 2017 WL 3017509, *4 (S.D. Tex. July 14, 2017); *Cruz v. Conocophillips*, 208 F. Supp.3d 811, 816 (S.D. Tex. 2016); *Jones v. Cretic Energy Servs., LLC*, 149 F. Supp. 3d 761, 769 (S.D. Tex. 2015).

supported only by affidavits from the plaintiff and attorney that other, unnamed individuals were aggrieved); *Sandel v. Fairfield Indus., Inc.*, 2014 WL 1379902, at *3 (finding other aggrieved individuals based on evidence of other workers' emails expressing concern about the payment schedule and the presence of a second plaintiff)*; cf. Davis v. Mostyn Law Firm, P.C.*, No. H-11-cv-02874, 2012 WL 163941, at *6 (S.D. Tex. Jan. 19, 2012) (relying on the plaintiff's declaration and one declaration of a former employee to conclude that other aggrieved individuals existed).

Hester has provided a sampling of paystubs from other employees and his own declaration to show that other aggrieved individuals exist. (Docket Entry Nos. 33-1, 42-1). This evidence is insufficient. While the paystub sampling gives the names of other employees who were paid on a day-rate basis and suggests where they worked, Hester has not explained how the sampling shows that other employees worked over 40 hours a week without overtime compensation. Hester's declaration does not provide identifying information that supports a reasonable conclusion that other aggrieved individuals exist. The first element is not met.

### 2. Whether Other Employees Are Similarly Situated to the Plaintiff

Many courts have stated that putative class members must show that they were affected by a common policy, plan, pattern, or practice to satisfy the "similarly situated" inquiry. *See, e.g.*, *O'Brien v. Ed Donnelly Enters., Inc.*, No. 2:04-cv-00085, 2006 WL 3483956, at *3 (S.D. Ohio Nov. 30, 2006) ("Plaintiffs must demonstrate that the Defendants had a common policy or plan in violation of the FLSA that negatively impacted the original and opt-in Plaintiffs."); *England*, 370 F. Supp. 2d at 507 (a court may refuse to allow plaintiffs "to proceed collectively if the action arises from circumstances purely personal to the plaintiff and not from any generally applicable rule, policy, or practice"). A plaintiff must present a reasonable basis for his allegation that a class of similarly situated individuals exists. *Lima v. Int'l Catastrophe Sols., Inc.*, 493 F. Supp. 2d 793, 798

13

(E.D. La. 2007). "[T]he 'similarly situated' requirement of § 216(b) is more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance)[, so] . . . . a unified policy, plan, or scheme of discrimination may not be required to satisfy . . . § 216(b)." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1095 (11th Cir. 1996); *see also Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 534–35 (S.D. Tex. 2008) (collecting cases).

Potential class members are considered similarly situated to the named plaintiff if they are "similarly situated in terms of job requirements and similarly situated in terms of payment provisions." *Ryan*, 497 F. Supp. 2d at 825 (citing *Dyback v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567–68 (11th Cir. 1991)). "[The] positions need not be identical, but they must be similar." *Barnett v. Countrywide Credit Indus., Inc.*, No. 3:01-cv-01182, 2002 WL 1023161, at *1 (N.D. Tex. May 21, 2002) (alteration in original) (quoting *Tucker v. Labor Leasing, Inc.*, 872 F. Supp. 941, 947 (M.D. Fla. 1994)). If the job duties among putative class members vary significantly, then class certification should be denied. *See, e.g.*, *Dreyer*, 2008 WL 5204149, at *3; *Aguirre v. SBC Commc'ns, Inc.*, No. H-05-3198, 2007 WL 772756, at *9 (S.D. Tex. Mar. 12, 2007).

The defendants argue that Hester has failed to meet this requirement because he has not "provide[d] enough details to show that the putative class members are similarly situated in job requirements." (Docket Entry No. 38 at 19 (emphasis omitted)). They assert that there are many types of construction-field representatives with different required certifications. (*Id.*). The defendants contend that the shared job title obscures the fact that the jobs "are not one-size-fits all," but instead have different day-to-day responsibilities. (*Id.* at 19, 20).

Hester argues that he has provided evidence showing that he and members of the proposed class performed the same type of work, including "performing manual labor job duties, drafting and

14

sending daily reports to Phillips 66 supervisors, writing work permits, and attending daily staffing meetings." (Docket Entry No. 42 at 3; Docket Entry No. 33-1 at ¶ 12). He contends that their work included close supervision by Phillips 66, "was largely technical in nature," and subjected them to the same policies and procedures through Hayes's and Phillips 66's Master Service Agreement. (Docket Entry No. 42 at 3; Docket Entry No. 33-1 at ¶¶ 18–19). He points to evidence showing that, although some job responsibilities differed, the defendants had the same day-rate policy in every state, the construction-field representatives used the same forms for assignments, and the construction-field representatives had the same supervisor regardless of location. (Docket Entry No. 50 at 6–8).

That Hester and the members of the class he proposes worked in different locations throughout the country is not dispositive. "[G]eographic commonality is not necessary to satisfy the FLSA collective action's 'similarly situated' requirement." *Vargas v. Richardson Trident Co.*, No. H-09-1674, 2010 WL 730155, at *6 (S.D. Tex. Feb. 22, 2010) (collecting cases). Instead, "the focus is on whether the employees were impacted by a common policy." *Id.* at *9. If there is a reasonable basis to conclude that the same policy applies to all of a specified category of employees in multiple locations of a single company, certification is appropriate. *Rueda v. Tecon Servs., Inc.*, No. H-10-4937, 2011 WL 2566072, at *4 (S.D. Tex. Jun. 28, 2011).

Hester has provided sufficient evidence to show that Phillips 66 construction-field representatives staffed through Hayes were subject to the same pay policy. And under the lenient standard that applies at this stage, he has provided sufficient evidence to show that the class members had similar job responsibilities. Hester's declaration explains that the class members "perform[ed] manual labor job duties, draft[ed] and sen[t] daily reports to Phillips 66 supervisors,

15

wr[ote] work permits, and attend[ed] daily staff meetings." He also notes that the same Phillips 66 policies and procedures applied to the members. (Docket Entry No. 42 at 3 (citing Docket Entry No. 33-1)).

The evidence is sufficient to meet the threshold for conditional class certification. The second element is met.

### 3. Whether Other Employees Want to Opt In

The third *Lusardi* question is whether the evidence shows that other similarly situated employees want to join the class. "[A] plaintiff must do more than show the mere existence of other similarly situated persons, because there is no guarantee that those persons will actually seek to join the lawsuit." *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1165 (D. Minn. 2007) (emphasis omitted). "Affidavits from potential class members affirming their intention to join the suit are ideal for an analysis of whether 'the putative class members were together the victims of a single decision, policy, or plan.'" *Simmons v. T-Mobile USA, Inc.*, No. H-06-1820, 2007 WL 210008, at *9 (S.D. Tex. Jan. 24, 2007) (quoting *Mooney*, 54 F.3d at 1214 n.8); *see also D'Anna v. M/A–COM, Inc.*, 903 F. Supp. 889, 894 (M. Md. 1995) (affidavits are advisable so an employer will "not be unduly burdened by a frivolous fishing expedition conducted by [a] plaintiff at the employer's expense"). "However, affidavits *per se* are not required and a named plaintiff may submit some other form of evidence that the additional aggrieved persons exist and want to join the suit." *Simmons*, 2007 WL 210008, at *9.

"[A] district court 'should satisfy itself that there are other employees . . . who desire to "opt-in" and who are "similarly situated" with respect to their job requirements and with regard to their pay provisions.'" *Id.* (quoting *Dybach*, 942 F.2d at 1568). "It is conceivable that in certain

circumstances, such as when an employee worked for an employer for only a short period of time, it might be appropriate to permit some discovery as to the identity of other similarly situated employees," but "an FLSA plaintiff is not entitled to conditional certification simply to seek out others who might wish to join the action." *Parker*, 492 F. Supp. 2d at 1166, 1167 n.6.

No other plaintiff has filed a consent to join. Hester has not submitted affidavits showing that there are other employees similarly situated and interested in joining the litigation. Courts in this district rarely find that a plaintiff has shown that other aggrieved employees want to opt in without either affidavits from these employees or their consents to join. The courts "require more than a plaintiff's self-serving conclusory affidavit that fails to identify specific individuals that want to join the suit." *Pierce*, 2019 WL 338129, at *4; *see also, e.g.*, *Shaw*, 2017 WL 3866424, at *8 (*Lusardi* standard met with affidavits of three other employees asserting FLSA overtime violations); *Shaffer v. M-I, LLC*, No. H-14-2966, 2015 WL 7313415, at *4 ("One valid consent to join, an inadequate consent to join, and Shaffer's vague statement that others may exist is insufficient.").

In cases arising out of work conditions in which field-service employees did not report to an office, but instead traveled directly from their homes to work sites, some district courts concluded that the requirement to show other interested individuals before notice is issued creates a "chicken and egg" problem. In these cases, the employees could not reasonably know who was similarly situated and interested in joining the litigation. In those circumstances, courts may not require a plaintiff to show that other class members are interested in joining the litigation. *See, e.g.*, *Gibson v. NCRC, Inc.*, No. H-10-1409, 2011 WL 2837506, at *7 (S.D. Tex. July 18, 2011); *see also Amendola v. Bristol–Myers Squibb Co.*, 558 F. Supp. 2d 459, 466 (S.D.N.Y. 2008) ("FLSA plaintiffs are not required to show that putative members of the collective action are interested in the lawsuit

17

in order to obtain authorization for notice of the collective action to be sent to potential plaintiffs."); *Neary v. Metro. Prop. & Cas. Ins. Co.*, 517 F. Supp. 2d 606, 622 n.7 (D. Conn. 2007); *Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 838 (N. D. Cal. 2010); *Davis v. Westgate Planet Hollywood Las Vegas*, LLC, No. 2:08–cv–00722–RCJ–PAL, 2009 WL 102735, at *12 (D. Nev. Jan. 12, 2009); *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 267 (D. Minn. 1991). Some courts in this district have followed this approach. *See, e.g.*, *Coca v. Big Bang Enters., Inc.*, No. 4:14-2122, 2015 WL 12532479, at *9 (S.D. Tex. Apr. 14, 2015); *Vanzinni v. Action Meat Distributs., Inc.*, No. H-11-4173, 2012 WL 1941763, at *3 (S.D. Tex. May 29, 2012) (courts have excused plaintiffs from showing the third element when the plaintiffs have adequately explained their reasons for the absence of that evidence); *Gibson*, 2011 WL 2837506, at *7 (requiring the third element was inappropriate where the plaintiff did not report to an office and had no access to similarly situated employees).

Hester has not alleged that his work conditions prevented him from talking to other similarly situated workers. Hester explains that he was a field-services representative and suggests that his work was "in remote locations that are far away from home." (Docket Entry No. 33-1 at ¶ 21). But he also states that he had conversations with coworkers about Phillips 66's and Hayes's pay practices and the nature of their work. (*See generally id.*). According to Hester, his conversations "with several former co-workers who Hayes staffed to Phillips 66 and who were classified as independent contractors and received a day rate" showed him "that there is a general interest . . . in recovering back wages . . . through this collective action." (*Id.* at ¶ 20). Hester does not name these coworkers or explain why they have not filed affidavits or consented to join. Hester's statements

18

suggest that his work conditions did not prevent him from contacting class members who could consent to join. Without evidence beyond his own declaration, the third element is not met.

Hester has not shown that conditional certification is warranted, even under the lenient *Lusardi* test. His motion for conditional class certification is denied on this record, without prejudice.

## IV. Conclusion

The motion to transfer venue to the Northern District of New Oklahoma, (Docket Entry No. 23), is denied. Hester's motion for conditional class certification, (Docket Entry No. 33), is denied without prejudice.

SIGNED on April 30, 2019, at Houston, Texas.

                                              Lee H. Rosenthal
                                     Chief United States District Judge